THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOAH BANK<br>7301 Old York Road<br>Elkins Park, Pennsylvania 19027<br><br>and<br><br>EDWARD SHIN<br>a/k/a EUNGSOO SHIN<br>1575 Sloan Way<br>Ambler, Pennsylvania 19002<br><br>    Plaintiffs,<br> v.<br><br>SUNDAY JOURNAL USA CORPORATION<br>4201 Wilshire Drive, Suite 604<br>Los Angeles, California 90010,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action by Plaintiffs Noah Bank and Edward Shin a/k/a Eungsoo Shin ("Shin") against Defendant Sunday Journal USA Corporation ("Sunday Journal") seeking redress for the commercial and other harm done to Plaintiffs as the result of many false, salacious, and highly offensive statements about Plaintiffs, as published by Defendant during April, May, and November 2017.

2. Noah Bank is a banking institution founded by a group of investors, led by Shin. Shin is currently President and CEO of Noah Bank.

3. Noah Bank has branch offices in Pennsylvania, New Jersey and New York. A substantial

4. As a result of Defendant's publication of defamatory statements about Noah Bank, Noah Bank's brand has lost significant value, its banking business was lost, and substantial business opportunities that were otherwise available to Noah have been lost or negatively impacted.

portion of its business focuses upon servicing Korean-speaking individuals and Korean-owned businesses located in the Northeast United States.

5. As a result of Defendant's publication of defamatory statements about him, Shin suffered damages to his reputation as well as pecuniary losses, including loss of compensation, bonuses, and future income.

6. Defendant Sunday Journal, a Los Angeles-based Korean-language periodical, published four articles in the Korean language that were highly critical of Noah Bank and Shin. In these four defamatory articles (the "Articles"), Sunday Journal falsely reported that Noah Bank and Shin engaged in illegal business practices such as bribery, and also implying receipt or payment of illegal kickbacks.

7. Notwithstanding the lack of any reliable factual support for its false claims, Defendant made the conscious decision to publish these defamatory statements. At the time of each publication, the Sunday Journal was either aware that its statements about Plaintiffs were false, or Sunday Journal had serious doubts about the truth of the claims. Sunday Journal's publication of these defamatory claims reached thousands of readers in the Korean community worldwide, including those in Pennsylvania, New Jersey and New York.

8. Defendant's false and defamatory statements about Plaintiffs have caused substantial harm to Plaintiffs' personal and professional reputation, for which Plaintiffs jointly seek

compensatory and punitive damages of no less than $15 million.

## PARTIES

9. Plaintiff Noah Bank is a Pennsylvania banking corporation with its home office located at 7301 Old York Road, Elkins Park, Pennsylvania.

10. Plaintiff Shin is a citizen of the Commonwealth of Pennsylvania and an individual residing at 1575 Sloan Way, Ambler, Pennsylvania.

11. Defendant Sunday Journal USA Corporation is a California corporation with its principal place of business located at 4201 Wilshire Drive, Suite 604, Los Angeles, California.

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because and Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

13. This Court has personal jurisdiction over the Defendant because the false and defamatory statements made by Defendant were published in the Commonwealth of Pennsylvania and each of the Plaintiffs, targets of these defamatory statements, was and remains a citizen of Pennsylvania.

14. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial portion of the events that gave rise to Plaintiffs' claims occurred in this District, including a substantial portion of the harm suffered by the Plaintiffs.

## FACTS

15. On or about April 27, 2017, this Los Angeles-based periodical, Sunday Journal, published the first of four articles in the Korean language that were highly critical of

Noah Bank and Shin generally, and specifically regarding a Noah Bank loan to the purchaser of a commercial property in Queens, New York, occupied by several businesses, including a karaoke bar.

16. The first article had the headline "Inside story of serious injury to Eungsoo Shin, President of Noah Bank, due to an assault at a room salon." The article was written by Chi-Yong Ahn, "the editor of the 'Secret of Korea.'"

17. The April 27, 2017 article starts by reporting on a "physical fight" between Shin and Mr. Lee at a "room salon." The article makes the following *false* statements regarding the incident:

   a. Shin engaged in "a physical fight" with Lee. (Shin did not engage in any fight with Lee).

   b. Lee was an "acquaintance" and "like [a] brother" to Shin. (Shin met Lee for the first time that evening).

   c. Shin fractured his nasal bone. (Shin's nose was not broken).

18. The April 27, 2017 article also made false statements critical of Shin's role as CEO and President of Noah Bank, as well as Noah Bank itself. These false statements included:

   a. "[A]ccording [to] Korean-American professionals in financial field, [Shin] had allegedly received some illegitimate commission in relation to loans." (The report of illegal commissions is false).

   b. "Especially, in 2015, President Shin received a consent order from financial supervisory authorities because of the poor bank management and the incompetence of the Board of Directors." (The issuance of the consent order was not based upon either "poor bank management" or that the Board was "incompetent.").

c. "Noah Bank was concerned about losing the customers' faith over the Bank if the fact around the incident in which President Shin, who had been notorious especially for drinking, was assaulted while he was drinking at a room salon [a traditional Korean establishment for eating and drinking socially] would be reported to the public." (This statement was false because Shin was injured after he left the room salon, not "while he was drinking" and he was never "notorious for drinking").

19. On or about May 4, 2017, Sunday Journal published a second article regarding Noah Bank and Shin.

20. This article had the headline "An inside story of the suspicious large transaction to the loan, made right after the assault incident, for a disqualified real estate of the person who was at the scene of the assault with Edward Shin, the President of Noah Bank." This article was also written by Chi-Yong Ahn.

21. The May 4, 2017 article reported on a "$4.8 million-dollar loan" approved after "an inappropriate drinking party with a mortgage applicant." The article makes the following *false* statements regarding the loan:

a. At the scene of the "incident, which resulted in President Shin's serious injury, the person keeping company with president Shin was a mortgage applicant, and it has been reported that one week after the incident, the mortgage applicant received a loan from Noah Bank and purchased the building where the assault incident took place. . .. The bank . . . decided to approve the loan right before and after the drinking occasion." (The report that the loan was approved after the incident is false, as the loan was already approved at the time of the incident).

b. The article correctly reported that this purchaser of the building that received the Noah Bank mortgage loan was sued by a real estate agent. Then, the article offered that, "Banks are, in general, very reluctant to offer a loan for a building which is involved in litigation, so experts in financial circles analyzed that the loan approval of Noah Bank was exceptional." (The report implying that Noah's approval of the loan was "exceptional" or not within the general norms is false, and the suit against the new owner, a minor defendant in that suit, was without substantial merit, as only the seller was potentially responsible for the real estate agent's commission).

c. The purchaser of the building, Chungkang Lee, was the applicant for the loan from Noah. "That is to say, the drinking party was inappropriate, due to the relationship among them; position 'B' as President and an Executive member of a bank, and position 'A' as a loan applicant." (The report that the meeting was inappropriate is false, as Shin and another bank officer were in attendance that evening to review the tenancy status at the request of the borrower, which is a legitimate lender function).

d. "[A] high-ranking executive of Noah Bank, who requested to remain anonymous, stated that Noah Bank granted the mortgage to Mr. Lee. Especially, the amount of mortgage was not just 4 million dollars but reached 4.8 million dollars. It has been reported that, with the fund, Mr. Lee closed the escrow and finalized the bill of sales on the date he received the mortgage. Initially, the sale price of the building was initially known to be at 8.5 million dollars, but since the loan was 4.8 million dollars, it can be inferred that the sale price of the building went up, or

the amount of mortgage became greater to be used for other purposes. However, so far, the bill of sales has not been registered at the Real Estate Registration Office of New York City, so the actual amount in unknown yet. If the amount of 8.5 million dollars is recoded in the bill of sales, it will bring up another question of that the balance of the $900,000 was used for." (These statements regarding inflated price and the implication of kickbacks are false, and it is not likely that a "high-ranking" executive of Noah Bank would mistakenly report otherwise).

e. "Originally President Shin had negative stance and ordered not to approve the mortgage, but for some reason, went through with mortgage approval. Perhaps because it was considered that the amount of mortgage was about 50% of the building price, but it is fact that all staff members are wondering about this. Especially, the mortgage approval was executed while President Shin couldn't show up for work due to being assaulted, so the reason for President Shin's decision of the mortgage approval is garnering the attention." (Reports that mortgage was improperly approved after the incident are false, as it was approved before the incident).

f. The incident that "resulted in President Shin's serious injury has indisputably revealed the internally covert matters of a bank and the controversies over property transactions at the core of Korean commercial community. If there were any unlawful deals in relation to the property transaction and others, it can have escalated to criminal matters, such as tax evasion and money laundering, etc., for which there is much attention towards the development of the incident." (Reports

of tax evasion, money laundering and other criminal activity are false and defamatory *per se*.)

22. On or about May 18, 2017, the Sunday Journal published a third article regarding Noah Bank and Shin.

23. This article had the headline "Tracking a Suspicion: After a Room Salon Incident of Edward Shin, the President of Noah Bank, a Huge Amount of Suspicious Mortgage Approval to the Person Who Kept Company With." This article was also written by Chi-Yong Ahn "issued from New York."

24. The May 18, 2017 article was mostly repetitive of the prior two articles. As a result, it repeated many of the false statements contained in the earlier articles. The *false* statements in this third article include:

 a. The headline reporting that the loan was approved after the incident is false, as is the report that the mortgage was "suspicious."

 b. Reports that the mortgage given to Mr. Lee was inflated by more than $900,000 and implying that this amount was improperly paid.

 c. Reports that Noah Bank improperly failed to obtain and file security interests in the mortgaged property.

 d. Reports that unnamed "bank officials" stated that "In relation to the building purchase, it is lack of logic that Noah Bank approved the mortgage without making any mortgage contract" and "perhaps there was a mortgage contract made, but if registered at the registry, the amount of the mortgage will be disclosed, and that's probably they are postponing the registration."

  e. Additional reports that one week after the "drinking party" with Shin, Lee received a mortgage of $4.8 million.

25. On or about November 12, 2017, Sunday Journal published a fourth article regarding Noah Bank and Shin.

26. This fourth article had the headline "'Waiving hands' outside the Water (insolvent loan) 'Splashing feet' under the Water (lawsuit)." This article was also written by Chi Young Ahn.

27. The November 12, 2017 Article is mostly repetitive of the prior three articles. As a result, it repeats many of the false statements contained in the earlier articles.

28. The false statements in this article included the allegation that Shin "approved the offer of the loan to Mr. Lee with whom he had drinks while he was hospitalized, which raised the suspicion of a bribe with drink entertaining over the loan offer." (Report that loan was improperly approved are false as it was approved before the incident; report of bribery is false and defamatory *per se*)

29. The statements of purported fact in the four Articles, quoted above, are false. Plaintiff Shin did not receive any "illegitimate commissions" on loans made by Noah Bank. The consent order did not recite "poor bank management" or that the Board of Noah Bank was "incompetent." Noah Bank was not concerned about losing customers because of the incident involving Shin and Lee. Noah Bank's approval of the loan referenced in the Articles was not "exceptional" or otherwise improper. Noah Bank and Shin have not engaged in money laundering, tax evasion, bribery or any other criminal actions.

30. The Articles failed to identify the name of any individual source for the Articles. The Articles contained no indication that the Sunday Journal ever attempted to contact

numerous witnesses who would have been a position to correct these false reports in the Articles, or thereafter.

31. The Sunday Journal made no attempt to contact Shin prior to publishing any of the Articles.

32. The Sunday Journal deliberately published in the Articles knowing that the facts stated therein were defamatory, knowing that the "facts" stated in them were likely false and were based upon unreliable sources, and compounded its misconduct by making a conscious decision not to contact witnesses with first-hand knowledge who would rebut the false reports the Sunday Journal wanted to publish.

33. The Sunday Journal published the Articles with reckless disregard of the truth.

34. The Sunday Journal is published in traditional paper form and on the internet, and its articles are also disseminated through its accounts on Twitter and Facebook, where the contents are intended by Sunday Journal to be further disseminated.

35. The Sunday Journal knew and intended that its defamatory statements about Plaintiffs would be viewed by Korean-speaking persons worldwide, including those in Korea, Pennsylvania, New Jersey and New York.

36. As a result of the defamatory statements made by the Sunday Journal, Noah Bank's reputation and goodwill in the Korean community was damaged.

37. As a result of the defamatory statements made by the Sunday Journal, Noah Bank has experienced pecuniary losses, including but not limited to the decrease in value of Noah Bank equity to be converted into cash or other assets in (a) a potential Initial Public Offering; (b) a potential private equity purchase; or (c) in a potential exchange for a substantial outside investment, as well as the loss of banking business.

38. As a result of the defamatory statements of the Sunday Journal, Shin's reputation within the Korean community has been damaged.

39. As a result of the defamatory statements of the Sunday Journal, Shin has experienced pecuniary losses, including but not limited to, his income, bonuses, future income, and the value of his equity interests of Noah Bank.

## COUNT ONE
## DEFAMATION

40. Plaintiffs reallege and incorporate paragraphs 1 through 39 as though fully set forth herein.

41. Sunday Journal published the defamatory statements in the Articles.

42. The defamatory statements in the Articles were false.

43. Sunday Journal negligently published the defamatory statements in the Articles.

44. Sunday Journal published defamatory statements in the Articles either knowing they were false or with reckless disregard for the truth.

45. The defamatory statements in the Articles constitute defamation *per se* because they reported that Noah Bank and Shin engaged in conduct that constituted criminal offenses.

46. The defamatory statements in the Articles constitute defamation *per se* because they reported that Noah Bank and Shin engaged in unethical and dishonest business misconduct, and also impugned each Plaintiff's fitness to perform their business duties.

47. The defamatory statements in the Articles have caused Noah Bank damages, including damages to its reputation and to its business interests and prospective economic opportunities.

48. The defamatory statement in the Articles have caused Shin damages, including damages to his reputation, compensation, bonuses, and to his business interests and prospective

economic opportunities.

49. Sunday Journal's conduct was knowing, malicious, willful, and wonton, entitling Plaintiffs to an award of punitive damages.

50. As a result of Sunday Journal's conduct, Plaintiffs are entitled to an award of compensatory and punitive damages in an amount to be proven at trial and not less than $15 million.

## COUNT TWO
## FALSE LIGHT

51. Plaintiffs reallege and incorporate paragraphs 1 through 50 as though fully set forth herein.

52. Sunday Journal published the Articles pertaining to Noah Bank and Shin that were false and thereby placed both Plaintiffs in a false light.

53. Sunday Journal's Articles placed both Plaintiffs in a light which would be highly offensive to a reasonable person.

54. Sunday Journal published the statements in the Articles either knowing they were false or with reckless disregard for the truth.

55. The false statements in the Articles have caused Noah Bank damages, including damages to its reputation and to its business interests and prospective economic opportunities.

56. The false statements in the Articles have caused Shin damages, including damages to his reputation, compensation, and to his business interests and prospective economic opportunities.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendant as follows:

1. Awarding compensatory and punitive damages to each Plaintiff in appropriate amounts to be determined at trial;

2. Enjoining Sunday Journal from publishing or republishing the defamatory statements made in the Articles;

3. Requiring Defendant to publish appropriate retractions, including but not limited to retractions in the Sunday Journal and full page retractions placed by Defendant in other popular Korean-language publications, including Korean Daily and Korean Times;

4. Awarding the Plaintiffs the recovery of their costs associated with this action, including but not limited to their reasonable attorneys' fees and expenses; and

5. For such other and further relief as the Court deems just and appropriate.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a jury trial on all claims that are triable to a jury in this action.

April 2, 2018

Respectfully submitted,

David A. Cohen
Pa. I.D. No. 54342
The Basil Law Group
1270 Broadway
Suite 305
New York, NY 10001
Phone: (917) 512-3066
davidacohen@rjbasil.com
*Attorneys for Plaintiffs*